UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY J. DECHENEY,

    Plaintiff,

v.                                       Case No. 1:13-cv-1302

                                        Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on August 28, 1961 (AR 171).[1] Plaintiff alleged a disability onset date of July 10, 2008, which he later amended to January 28, 2010 (AR 64, 171). He completed the 11th grade and had previous employment as an injection machine operator, general laborer, and maintenance man helper (AR 69, 177). Plaintiff identified his disabling conditions as nerve damage to spine, enlarged heart, depression, arthritis in the back and hands, and numbness in left leg (AR 176). On July 26, 2012, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 62-71). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of January 28, 2010, and that he met the insured status requirements of the Social Security Act through June 30, 2013 (AR 64). At step two, the ALJ found that plaintiff suffered from severe impairments of a back disorder, hypertension, and a mood disorder (AR 64). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 64).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he may frequently handle with the right upper extremity. He may occasionally climb, stoop, kneel, crouch and crawl. He may never be exposed to unprotected heights in the workplace, and may only occasionally operate a motor vehicle in the work environment. He is limited to simple tasks.

(AR 66). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 69).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 70). Specifically, plaintiff could perform the following unskilled light work in the region : rental clerk (1,200 jobs); usher/lobby attendant (1,000 jobs); and mail sorter (1,300 jobs) (AR 70).[2] Accordingly, the ALJ determined that plaintiff has not been under a

---

[2] While the ALJ's decision did not identify the relevant "region," the vocational expert identified the region as the State of Michigan (AR 24).

disability, as defined in the Social Security Act, from January 28, 2010 (the amended alleged onset date) through July 26, 2012 (the date of the decision) (AR 70-71).

### III. ANALYSIS

Plaintiff raised four issues on appeal.

### A. The ALJ gave insufficient reasons for rejecting plaintiff's complaints.

Plaintiff contends that the ALJ improperly evaluated his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ summarized plaintiff's alleged limitations as follows:

> The claimant testified that he is unable to work on a sustained basis due to pain in his upper and lower back, radiating to his right arm and right leg. He takes Norco, a narcotic, for pain, although he says it barely works. About two days per week, he is unable to pick up his right arm. He has four to seven "bad days" per week where he cannot do anything but sit, due to back pain. He also has depression because he does not do the activities that he used to do. He does not believe he could work an eight-hour day.
>
> He does not drive because he cannot turn his head left to right, and he has not had a driver's license in about 25 years. At home, he can mow the 20 x 20 lawn for five minutes at a time, with it taking a couple hours to complete. He cannot do laundry or dishes because he cannot stand for that long. He can cook only simple things such as hot dogs. On a typical day, he watches television and lies down.

(AR 66).

Plaintiff contends that the ALJ improperly impugned his credibility by "cherry picking" the evidence with respect to his ability to drive, his lack of limitations at the consultative examination, his ability to sit through a consultative examination and his ability to mow the lawn. Plaintiff's Brief (docket no. 12) at pp. ID## 373-75. The Court disagrees. The ALJ found that plaintiff had significant abnormalities of his cervical spine that could reasonably cause neck and radicular symptoms (AR 67). However, the ALJ noted that despite the alleged severity of his neck and back pain, which plaintiff rated on a pain scale as "nine out of ten," he was able to sit through a one-hour consultative evaluation without any evidence of discomfort and demonstrated few clinical signs of limitations (AR 67). The ALJ further evaluated plaintiff's credibility as follows:

> There are several discrepancies in the record unrelated to his impairments, which call in to question the credibility of the claimant's allegations. The claimant testified that he never drank heavily, although he has admitted in the past to a history of heavy drinking and several DUIs (Ex. 4F). The claimant testified that he has not had a valid license in about 25 years, yet he claimed that his last DUI was only about 12 years ago (Ex. 4F). He also drove to the consultative examination in October 2011 despite not having a driver's license, and despite his allegation that he does not drive because he cannot turn his head (Ex. 4F). He also demonstrated full range of motion of his neck at the consultative physical examination (Ex. 5F). Furthermore, the claimant testified to mowing the lawn with a push mower. Even though he takes

> frequent breaks and has a small yard, such an attempt at this physically demanding task is not in line with his allegations of severe neck pain and numbness in his arm.
>
> In sum, I find that the claimant has credible pain based on his repeated complaints as well as the objective evidence of his significant cervical spine and mild lumbar spine abnormalities. Therefore, I accounted for limitations due to pain. However, I find that the claimant is not fully credible as to the extent of his allegations because of his intact motor strength, full range of motion, ability to drive and mow the lawn, and number of inconsistent statements.

(AR 67-68).

Here, the ALJ is the immediate judge of the evidence, and his evaluation of it is by law accorded deference. There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ has found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. In addition, the ALJ accommodated plaintiff's impairments in the RFC by including: exertional limitations (light work); postural limitations (only occasional climbing, stooping, kneeling, crouching and crawling); environmental limitations (no exposure to unprotected heights in the workplace and only occasional operation of a motor vehicle); manipulative limitations (only frequently handle with the right upper extremity); and mental limitations (limited to performing only simple tasks) (AR 66). Based on the entire record of this case, the Court concludes that the ALJ's credibility determination was supported by substantial evidence. There is no compelling reason for the court to disturb that determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error should be denied.

### B. The ALJ gave invalid reasons to reject the treating PA.

Plaintiff contends that the ALJ rejected the opinions of his treating physician's assistant, Theodore Dorsey.

As an initial matter, the ALJ did not "reject" the opinions of plaintiff's PA Dorsey. Rather, the ALJ gave these opinions some weight:

> Theodore Dorsey, PAC, opined in July 2012, that the claimant could sit up to four hours, stand up to one hour and walk up to one hour each in an eight hour workday (Ex. 10F). He further found that the claimant can lift and carry up to ten pounds occasionally (up to two hours per day), and can never reach above shoulder level with both arms, never climb, crouch, or crawl, and occasionally (up to two hours) handle, finger, feel, push or pull (Ex. 10F). I have afforded some weight to this opinion. Dorsey is the claimant's treating physician's assistant, and therefore has a history of treating the claimant since January 2010 (Exs. 1F, 6F, 8F, 9F, l0F). However, Dorsey is not an acceptable medical source under our regulations, and he is not a specialist in spinal disorders, neurology, orthopedics, or other related concentration. While some limitations due to pain are certainly credible, this opinion appears based entirely on the claimant's allegations of pain, as Dorsey's examinations of the claimant showed negative straight leg raise, no sensory loss, no motor weakness, and intact coordination and reflexes (Exs. 8F,9F). Furthermore, the opinion is not consistent with the claimant's ability to drive and mow the lawn in even short increments. In addition, while Dorsey has significantly limited the claimant's use of both arms, the claimant testified that it is only his right arm, not both arms, that he has difficulty with.
>
> Just four months prior to this opinion, Dorsey opined that the claimant should avoid heavy or medium lifting or physical labor (Ex. 6F). This opinion suggests that his limitations were not of a disabling level, as he was not precluded from light work. The opinion contrasts with the above opinion rendered just four months later, apparently due to the claimant's allegations of worsening pain. However, his clinical signs remained unchanged. Therefore, I also afford some weight to this opinion.

(AR 68-69).

The ALJ correctly noted that PA Dorsey was not an acceptable medical source who could provide evidence to establish that plaintiff had a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a) (defining acceptable medical sources as licensed physicians,

licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). PA Dorsey is considered an "other" medical source, whose opinion is not entitled the weight given to that of an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (in addition to evidence from acceptable medical sources, the agency may use evidence from "other" medical sources, such as nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists, to show the severity of a claimant's impairments). *See* Social Security Ruling (SSR) 06-3p (providing that opinions from other medical sources, including physicians' assistants, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file").[3] The record reflects that the ALJ properly considered PA Dorsey's opinion as that of an other medical source and assigned that opinion some weight regarding the severity of plaintiff's condition.

In addition, plaintiff contests the ALJ's determination that PA Dorsey's opinion was based on subjective evidence provided by plaintiff, i.e., that Dorsey's opinion was "based entirely on the claimant's allegations of pain." Plaintiff points out that when asked to identify the "supportive medical findings" for his opinion, PA Dorsey stated "See MRI cervical & lumbar spines" (AR 322). Based on this statement, PA Dorsey relied, in part, on a diagnostic test. However, PA Dorsey did not specify any medical findings in the MRI, or in the clinical testing, which supported the extreme limitations he assigned to plaintiff. *See Hill v. Commissioner of Social*

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

*Security*, 560 Fed.Appx. 547, 551 (6th Cir. 2014) (disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it"); *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual").

PA Dorsey was apparently referring to an October 2011 MRI which included the following findings: a disc hernia at the C6-7 level resulting in thecal sac flattening and cervical cord effacement, likely having mass effect upon the forming nerve roots at the lateral recess; degenerative changes from C3 through C6, including severe stenosis at C3-4; and, mild degenerative changes of his lumbar spine (AR 67, 297-300). In reviewing the MRI results, the ALJ noted that "[p]laintiff has significant abnormalities of his cervical spine that could reasonably cause neck pain and radicular symptoms" (AR 67). However, PA Dorsey's examinations in 2011 and 2012 provided no objective evidence to establish that plaintiff had limitations arising from those abnormalities. *See, e.g.*, August 2011 (plaintiff had no abnormalities in back/spine, no sensory loss, no motor weakness, deep tendon reflexes preserved and symmetric); September 2011 (plaintiff had negative straight leg raising test, no sensory loss, no motor weakness, deep tendon reflexes symmetrically increased); June 20, 2012 (plaintiff had no motor weakness, coordination was intact, deep tendon reflexes preserved and symmetric) (AR 301-10, 317).

While the ALJ erred by failing to note that PA Dorsey's opinion referenced an MRI, the error was harmless, because despite the abnormalities appearing in the MRI, PA Dorsey's records fail to establish that plaintiff had limitations related to those abnormalities. *See Hill*, 560

Fed.Appx. at 551; *McKenzie*, 2000 WL 687680 at *5. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Plaintiff also contends that the ALJ improperly discounted PA Dorsey's opinion because Dorsey "is not a specialist in spinal disorders, neurology, orthopedics, or other related concentration" (AR 69). In making this statement, the ALJ was apparently referring 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5), which provide that "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."[4] Here, the deference given to a specialist's opinion in §§ 404.1527(c)(5) and 416.927(c)(5) did not come into play, because the ALJ did not rely on specialist's opinion which differed from PA Dorsey. However, the Court does not view this error as requiring remand, given the other bases for the ALJ's evaluation of PA Dorsey. *See Fisher*, 869 F.2d at 1057. Accordingly, this claim of error should be denied.

### C.    The ALJ's decision is internally inconsistent.

Plaintiff contends that the ALJ's RFC limiting him to "simple tasks" is internally inconsistent with the ALJ's finding that plaintiff was "moderately" limited in concentration, persistence and pace. Plaintiff's Brief at p. ID# 380. However, this argument is not persuasive. RFC is a medical assessment of what an individual can do in a work setting despite functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the maximum degree to

---

[4] Plaintiff identifies this regulation as 20 C.F.R. § 404.1527(d)(5). Plaintiff's Brief at p. ID# 377 (docket no. 12).

which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992). RFC is determined at step four of the sequential evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014).

Here, the finding referred to by plaintiff was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04 and 12.06 (AR 65-66). This finding was not an RFC finding made at step four. *See* 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder").

As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings. . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments []. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a

>"moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.

Furthermore, the ALJ's RFC took into account plaintiff's nonexertional limitations by limiting him to "simple tasks" (AR 66). Unskilled work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) and 416.968(a). Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment). The vocational expert (VE) identified unskilled jobs consistent with this RFC (AR 23-24, 70). This claim of error is without error.

>**D.  The ALJ gave no reason to ignore the report of a lay witness, Tina Neuman**

Plaintiff's girlfriend, Tina Neuman, completed a questionnaire on August 27, 2011, stating in pertinent part that "[p]laintiff has to lie down a lot (188) and mows only one row before stopping (189, 192)" and that plaintiff "prepared light meals (189) and left home twice a week (190)." Plaintiff's Brief at p. ID# 366. Plaintiff contends that the ALJ not only "failed to give good reasons" to reject to the statement made by Tina Neuman, but that the ALJ "did not mention it at all." *Id.* at pp. ID## 380-81.

The ALJ may use evidence of "other" sources to show the severity of a claimant's impairments and how those impairments affect the claimant's ability to work. 20 C.F.R. §§

404.1513(d) and 416.913(d).  These "other" sources include non-medical sources such as spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy.  20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4).

In this instance, the ALJ did not address Ms. Neuman's statement which appeared in a third-party statement submitted to the Social Security Agency (SSA).[5]  However, this is not an error requiring reversal because the ALJ's decision does not need to explicitly address each piece of evidence which appears in the administrative record.  The record reflects that the ALJ considered the entire record (AR 64, 66).  "Neither the ALJ nor the [Appeals] Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Commissioner of Social Security Administration*, 397 Fed. Appx. 195, 199 (6th Cir. 2010).  *See Bailey v. Commissioner of Social Security*, 413 Fed. Appx. 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953(a)) (While an ALJ is required to provide specific

---

[5] Defendant contends that Ms. Neuman's statement was not subject to review by the ALJ because it was not testimony given by the witness at the administrative hearing, i.e., "Ms. Neuman did not give testimony under oath but simply completed a written questionnaire and submitted it to the Commissioner in connection with plaintiff's initial application."  Defendant's Brief at pp. ID## 462-63 (docket no. 14). Defendant's position is disingenuous.  The regulations refer to "[m]edical and other evidence of your impairment(s)" without specifying that the evidence be in the form of testimony at an administrative hearing. *See* 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4) ("Other sources include, but are not limited to . . . (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).").  While Neuman's statement was not testimony given at a hearing, it was written evidence provided to the SSA on the SSA's own form (AR 187-94).  *See generally*, *Morgan v. Barnhart*, 142 Fed. Appx. 716, 731 (4th Cir. 2005) (Gregory, CJ, concurring in part and dissenting in part) (in addressing the government's position that third party statements, which included statements by family members, should be given no weight, the judge observed that "if family members' evidence was automatically worthless, it would be an odd exercise in futility to even allow them to fill out questionnaires and submit them into evidence.").  Indeed, some courts view questionnaires completed by lay witnesses as equivalent to testimony.  *See, e.g., Duncan v. Colvin*, 593 Fed. Appx. 668, 669 (9th Cir. 2015).  While Ms. Neuman was not a family member, she observed plaintiff on a regular basis.  As in the case of a family member, it would be an "odd exercise in futility" if the SSA provided Neuman with a questionnaire during the initial evaluation of plaintiff's claim but then excluded the questionnaire from the ALJ's consideration because it was not testimony given under oath at the administrative hearing.

reasons for crediting or discrediting a claimant's testimony, "he is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'"); *Daniels v. Commissioner of Social Security*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"). Accordingly, plaintiff's claim of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: July 6, 2015                             /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).